## BURNS vs. MASON.

Our statute which makes all contracts which by the common law are joint only, joint and several, does not affect the law governing the liabilities of partnerships.  Hence, a note given by the individual members of a firm for the sole use of one member, is not to be treated as a partnership debt, and will not in equity be allowed against the property of an insolvent firm.

APPEAL from Platte Circuit Court (In Chancery.)

Leonard & Bay, *for Appellants.*

1. It is admitted that in the settlement of partnerships, the joint estate is first applicable to partnership debts, and the separate estate to the separate debts.   But in this case, the note for $1,500, executed by the partners in their individual names, is the joint and several note of the partners, and created a joint and several indebtedness, although not executed in the name of the firm.   It is clear that the credit was given to both, and that both are principals to the payee.— The fact that the money was entered on the books of the firm to the credit of one of the partners, cannot affect the rights of the payee, who was a stranger to this arrangement.   Rev. Statutes, title "Contracts and Promises," p. 216.

2. The reason of the rule that partnership effects shall first be applied to the payment of partnership debts, in preference to the separate debts of the partners, is that the property of one partner shall not be taken to pay the private debts of another, and that creditors have a right to look

to that fund for payment in which the credit was given. In this case, both partners were equally liable to the payee for the amount of this note. So far as the payee was concerned, it was the debt of both partners, and he was the creditor of both, and advanced the money on the credit of both. Indeed, the money was borrowed and used for partnership purposes.

3. No question can arise in this case as to the rights of the other creditors of the partnership, for the bill shows, that after the payment of all the partnership debts, there would be a balance remaining sufficient to discharge this debt of $1,500. Besides, it is not alleged in the bill that the rights of the creditors of the partnership were affected by the payment of this note. In paying this note, Fielding Burns did nothing more than the law would have compelled both parties to do. If judgment had been obtained against them on the note, their joint property would have been liable for the amount. The court, in setting aside the payment of the note, relieved the property of the complainant from the payment of a debt for which he was bound, to the great injury of his creditor. Brinkerhoof vs. Marvin, 5 J. C. R., 320.

4. The decree, as to the note of $1,500, was against the evidence. The answer of Jas. Burns, denies all the material averments in the bill, and expressly states that the money was loaned to both parties. This is not succesfully controverted by the evidence. The fact that the money was placed to the credit of Fielding Burns on the books of the firm, seems to have influenced the court in making the decree, whereas this was a private arrangement between the partners, not affecting the rights of James Burns, the payee. Osborn vs. U. S. Bank, 9 Wheat., 738; Chapin vs. Colman, 11 Pick., 331.

5. The bill is multifarious. Daniel D. Burns had nothing to do with any of the transactions, and other of the defendants are made parties to the bill, against whom no relief could have been properly asked.

6. Even if this note should be considered as the separate indebtedness of each partner, yet the interest of each partner in the partnership property may be taken and sold for his separate debt; and, from the complainant's own showing, the partnership creditors were not injured by the payment of this note. The surplus claimed by the complainant, after the payment of the partnership debts, would have been more than sufficient to pay the note. Moody vs. Payne, 2 J. C. R., 348.

Isaac N. Jones, *on the same side.*

1. The rule is, that several injuries cannot be joined in chancery any more than at law. 1 Mo. R., 100, 101.

2. That the interest of the appellants is in no way connected with the settlement of the partnership matters between Mason & Burns, which is the main subject matter of this suit, and for this reason the bill is multifarious, and should have been dismissed as to appellants. 9 Mo. R., 293; Story's Eq. Pl., 262, 397, note 2, 398, 412.

3. That if a demurrer would have been good against the bill, the court will not grant relief, though the appellants have answered. 1 Mo. R., 100, 101; Story's Eq., Pl., 362-5-6.

4. The bill shows that the money for which the $1,500 note was given, went into the firm of Mason & Burns, and the answer of James Burns states positively that the $1,500 note is a firm debt, and the evidence shows that the money was got after the article of copartnership was signed, and that Mason & Burns have both acknowledged the justness of the 1,500 note; therefore the presumption of law is, that the 1,500 note is a debt due from the firm of Mason & Burns to James Burns, and it is incumbent on the complainant to show the contrary, if he sets up that it is an individual debt of F. Burns. 3 Kent's Com., 40-1; 4 Mo. R., 74; Collyer on Part., 214, note 3, 215; note 3, 212; note 1, 227; note 1, 267-8.

5. The answer of appellants and the evidence shows that the payment of the $1,500 note was a fair *bona fide* transaction, and beneficial in an eminent degree to the firm of Mason & Burns, and within the scope of the business of the firm, and that under such circumstances the payment of

the note is valid in law and binding upon the firm of Mason & Burns. 3 Kent's Com., 44; Collyer on Partnership, 101, note 1, 216; note, 1, 258-9.

6. The commissioner decided the $1,500 note to be the individual debt of F. Burns, upon the face of the note, and not upon the evidence; therefore the decision of this question in the court below can have no weight with this Court.

7. The bill admits the solvency of the firm, and avers that Mason will have about $2,000 due him after the firm is settled up. The decree of the court below decides the $1,500 note to be joint, and *restrains* the collection of it *from* the *effects* of the *firm*. Under these circumstances, Mason has no right to come into a court of equity to restrain the collection of a note which is admitted to be just, and *before suit is commenced upon it.*

Wilson & Rees, *for Appellee.*

1. The firm creditors had a preference over the $1,500 note, being the individual note of F. Burns, with Mason security thereto. For the facts, see copy of the note, signed by F. Burns and S. T. Mason; record, page 13. It will also be seen the amount was credited on firm books to F. Burns. See also, to this point, the depositions of Campbell, Phelps, McYoung, Parrot, Wallingford, Eldridge, Brown and Almond. For the law on this point, see Divien vs. Fowler, 2 Paige, 400; Egbert vs. Wood, 3 Paige, 518; Melden vs. Retter, 3 Paige, 167; Munford ats. Nicoll, 4 J. C. R., 522; 20 J. R., 611; 3 Kent, 36; Fox vs. Hanberry, Cooper, 545; Tayler vs. Fields, 4 Vesey, 396; 15 Vesey, 559; Faine vs. Jackson, 6 Mass., 242; Bell vs. Morrison, 1 Peter's R., 370.

2. When two partners composing a firm differ in good faith as to the propriety of doing any act, the partnership is suspended *quo ad hoc,* and the contract with one, having notice that the other is unwilling to it, is void. See Story on Partnership, 183, (note 4,) 5 Paige, 30; 2 N. H. R., 360; Gow., 231.

3. The whole transaction, on the part of F. Burns, the partner, and I. N Jones, the agent, "was conceived in sin and brought forth in iniquity," and therefore fraudulent in fact, and void as to Mason as well as to the firm creditors.

McBride, J., *delivered the opinion of the Court.*

Samuel T. Mason filed his bill in chancery in the Platte Circuit Court, against Fielding Burns, Lewis Burns, James Burns, Daniel D. Burns, and Isaac N. Jones, setting forth that, in the year 1840, complainant and Fielding Burns entered into copartnership, for the purpose of carrying on the mercantile business, under the style of Mason & Burns, and that it was stipulated by the article of copartnership that each partner was to put into the firm $2000 as capital; that said partnership was to continue for three years from the date, unless sooner dissolved by mutual consent; that if either partner put into the concern more than $2000, he should receive interest on the surplus above that sum at the rate of six per cent. per annum; that each partner was to share equally in the profits and losses of the concern; that said articles of copartnership were placed in the hands of James Burns, one of the defendants, for safe keeping, who stated, on the demand of the complainant for a copy of the articles, that

they were not in his possession; and the complainant not being able to obtain either the articles or a copy thereof, cannot state more particularly the contents.

The bill also states, that at the time the articles of copartnership were entered into, Fielding Burns was not twenty-one years of age, but lacked about ten months of his majority; that a large portion of the capital to be furnished by Fielding, was to come from his father, the defendant, James Burns; that said James agreed to furnish his son Fielding the sum of $1500 for his share of the capital, provided the complainant would become his security therefor, with the understanding that when Fielding attained his majority, the note should be given up, and the amount thereof considered as Fielding's contribution to the capital stock of the concern; that under this arrangement the money was advanced by the father, and carried to the credit of the son, Fielding, on the books of the firm, and the complainant and Fielding executed their note to James for the same.

The bill further states, that in pursuance of the said agreement, the complainant advanced, as his share of the capital of the concern, about $1850, and Fielding advanced, on his part, said sum of $1500; that the business of the copartnership was carried on until the 15th February, 1843, when said Fielding, combining and confederating with the other defendants to defraud and injure the complainant, suddenly took possession of the goods, books, papers and notes of the firm, and wholly excluded the complainant from any participation in the management of the business. It is further averred that the indebtedness of the firm is about $3500, and that the assets of the firm are about $6000, in notes and accounts due the firm, together with about $2000 in merchandize at original cost and carriage; that there was on the books of the firm, to the credit of the complainant, after deducting his debts, about $500, and to the credit of said Fielding, after deducting his debts, about the sum of $900; that after paying all the debts due by the firm, there would be coming to the complainant about $2000.

The bill also alledges a combination on the part of the defendants to defraud the complainant, and for such purpose the defendant, James Burns, assigned the note for the said $1500, executed as heretofore stated, to the defendant Lewis Burns, and that the defendant, Isaac N. Jones, as the pretended agent of Lewis, made a pretended purchase of the said Fielding, in the absence and without the knowledge of said complainant, of all the notes and most of the goods of the firm, to satisfy the aforesaid note of $1500, and that said Jones took the same into his pos-

session, and refused the complainant access thereto.   The bill prays for the dissolution of the partnership—the appointment of a receiver—the cancellation of the note for $1500, and an injunction to restrain and inhibit the defendants from disposing of the effects of the partnership concern.

An injunction was granted in accordance with the prayer of the bill; a receiver was also appointed to take into his possession all the effects of the concern, and an order made to sell the goods and collect the outstanding debts; a further order was made on the defendants to deliver over to the receiver all notes, accounts, money and property in their hands received of the said firm of Mason & Burns, on the note for $1500.

The defendant, Lewis Burns answered, stating that he had no knowledge touching the partnership transactions of Mason & Burns; that the defendant, James Burns, who was the father of the respondent, as well as the father-in-law of the complainant, was far advanced in life, and requested respondent to take an assignment of the note for $1500, and collect the same for him, which he consented to do; that respondent, for the purpose of collecting said note, employed his co-defendant, Jones, as his agent.   He states that the complainant, shortly before filing his bill, stated to him that he, respondent, could not collect said note from him until suit was instituted against Fielding, as he, complainant, was only security on said note.   He denies all combination and fraud in the transaction.

Isaac N. Jones answered, stating that he, as the agent of Lewis Burns, called at the store of Mason & Burns to collect the said note, and took from the said Fielding goods to the amount of about $600, Illinois money amounting to $125, and cash notes due the firm to about the sum of $1,069, to be credited on the said note, and which he has delivered over to the receiver in the case, in compliance with the order of the court. He denies combination and fraud.

James Burns answered, denying most of the material averments in the bill; he denies that the note was to be given up when Fielding attained the age of twenty-one years, but that it was given for money loaned to the complainant and said Fielding, and was not intended as an advancement, then or at any future period, to said Fielding.   He denies fraud and combination.

Daniel Burns answered, denying all knowledge of the facts stated in the complainant's bill; also, all fraud and combination charged against him.

Fielding Burns answered, admitting the partnership as stated in the bill, but denies that the note for $1500 was for money advanced to him by his father, James Burns, or that the note was to be given up and cancelled when the respondent attained the age of twenty-one years; on the contrary, the money was borrowed by respondent and complainant, on their joint account, though the amount was afterwards carried on the books of the concern to the credit of the respondent. That the respondent delivered the goods, notes and money to his co-defendant, Jones, as the agent of the assignee of said note, in good faith and for the purpose of paying off said note, which was honestly due to said assignee from said respondent and complainant.

He charges the complainant with abstracting property, and misapplying the funds belonging to the firm, to a considerable amount; with making false entries in the books, and erasing correct entries made by respondent. Does not know what would be due complainant on a fair settlement of all the business of the firm. He denies all fraud and combination.

Replications were filed to the several answers of the defendants, and the case was then referred to a special master commissioner, to take an account of the affairs of the copartnership.

The commissioner filed his report, in which he says: "The commissioner has arrived at the conclusion that the firm of Mason & Burns is not, *as such,* bound for the note of $1500 executed by the complainant and Fielding Burns to James Burns. The commissioner is brought to this conclusion from the following facts, viz: The said note, although made after the articles of copartnership were signed between Samuel T. Mason and Fielding Burns, is not executed in the name and style of Mason & Burns, but is signed by the individuals, Samuel T. Mason and Fielding Burns. From the fact that the money thus obtained of James Burns, senr., was entered to the credit of Fielding Burns on the books of the firm of Mason & Burns, and is claimed by said Fielding Burns, in his answer, as part of the capital placed in the firm of Mason & Burns by him. It would therefore appear that the said sum of money was obtained, not for the use and benefit of the firm of Mason & Burns, but to enable Fielding Burns to take his place as a partner therein, and for his special benefit."

The court decreed that the injunction be made perpetual, and being of opinion that the note of $1500 was the individual note of Fielding Burns, with said Mason as security, and that the assets of the firm could not be

appropriated to the payment of the same until the debts of said firm were first paid and satisfied, the receiver was ordered to pay the firm debts first, *pro rata*, out of the proceeds in his hands arising from the effects of said firm.

A motion was made to set aside the decree and grant a new hearing, which was overruled and exceptions taken, whereupon James Burns and Lewis Burns appealed to this Court.

The only matters appealed from are the orders of the court setting aside the contract between Fielding Burns and Lewis Burns for the payment of the note out of the partnership effects, and postponing the payment of the note until all the partnership debts were paid.

We shall first inquire whether the advance of the $1500 made by James Burns, senr., was intended as a loan to Mason & Burns, to be repaid at some future day, or whether it was furnished for the benefit of Fieldiｎg Burns, to enable him to raise the capital which he had, by the articles of partnership, entered into a few days prior with Samuel T. Mason, undertaken to advance to the mercantile firm of Mason & Burns.

The commissioner in chancery, in his report, refers to two facts, upon which he mainly relies, in arriving at the conclusion that the $1500 was intended by James Burns, senr., as an advancement to Fielding Burns, to enable him to furnish his part of the capital stock of the firm of Mason & Burns. These facts are doubtless entitled to due consideration, but are not conclusive within themselves. Other facts developed in the answer of James Burns, senr., and the testimony of witnesses, tend irresistibly to the same conclusion, and when taken in connection with those stated by the commissioner, establish the proposition beyond reasonable doubt.

James Burns, senr., in his answer says, "that about the last of January, 1840, said complainant and wife came to respondent's house on a visit, at which time complainant requested respondent to let Fielding enter into partnership with him in the mercantile business, when respondent partially agreed that said Fielding might, and that respondent would loan said Fielding the sum of $1500, by complainant and Fielding executing their joint note to him for the same." At this time Fielding was not of age, and the presumption is that he had no means of his own, and his only reliance for funds, to enable him to advance his portion of the capital stock of the mercantile firm, was upon his father. His father having consented that he might embark in the business, and having agreed to loan him the amount of $1500, he accordingly formed the partnership, and undertook to furnish $2000 as his part of the capital of said concern.

The formation of the partnership and the loan of the money were each dependent on the other—hence, when the money was obtained, the amount was credited on the books of the firm to Fielding Burns, as so much advanced by him.  If any other evidence was necessary to show that the loan was to Fielding, to enable him to go into business upon equal terms with Mason, it may be found in the answer of his father, who says, in an after part of his answer, "that afterwards, about the 20th February, 1840, said complainant and Fielding came to respondent's house to get the money, when respondent handed to said Fielding the sum of $1500, telling him that he was to have the money upon the condition that complainant and Fielding would sign the articles (the articles of copartnership) which Lewis had written for them to sign, and that said complainant and Fielding would execute their joint note to him for that amount, and that said complainant refused to sign said articles, at which time a difficulty took place between said complainant and Fielding in settling upon the articles of partnership between them, and fixing upon the price of the old stock of goods which complainant then had on hand."   Upon the refusal of Mason to sign the articles, they were destroyed, and the money returned to James Burns.   An application was subsequently made by Fielding to his father to loan the money to him and Mason, but the father positively refused, telling him "that he would sooner see the money burnt, than to see a difficulty between his children, and if they went into partnership, it would result in a difficulty."   The money was afterwards obtained, through the intervention of the wife of James Burns, and the note executed and by her delivered to her husband.

The object, then, for which the money was loaned, was unquestionably to enable Fielding to make the advance which he had undertaken to make, by the articles of partnership previously entered into between him and Mason, each binding themselves to advance the sum of $2000, to be used in their mercantile business.

Having ascertained what was the object of the loan, we shall next inquire into the intention of the parties to this transaction.   This intention we shall deduce from the evidence of some of the witnesses, taken in the cause.

*Richard C. Phelps* testified, that about the first January, 1840, he was at the house of James Burns, senr., when he saw Fielding Burns and Samuel T. Mason counting money, which he understood belonged to James Burns, senr.; that he saw some one write a note, and also some articles; saw Daniel Burns and also Samuel T. Mason writing; that he

understood from Mrs. Burns, wife of James, that the money which he saw was going to Fielding after he became of age; that he understood also from James Burns, senr., that the reason why he took a note from Mason was, to make him, James, safe; that the note spoken of was for $1500. He understood from the conversation which was had at the house of James Burns, senr., as aforesaid, between Mrs. Burns, Samuel T. Mason, Daniel Burns, Fielding Burns, and said James, that the note before mentioned was to be destroyed when Fielding Burns became of age. The money he saw as aforesaid was for the purpose of Fielding Burns going into partnership with Samuel T. Mason.

*Jesse McYoung* testified, that sometime in the year 1841, he had a conversation with James Burns, senr., about Fielding Burns running for Colonel, and observed that if Fielding got beat, it would cost a good deal, when his father said it was his own look out, for he had given him $1500 when he went into partnership with Mason; that he had given it to Fielding as his portion until the property was divided at his death, and then, if there was any more, he would get it; that he had given Lewis Burns 1500 or $2000.

*Evan Parrot* testified, that in 1841, James Burns, senr., called on him for money, at which time he was hard run, and Mr. Burns rather apologised for calling on him for the money, by stating that he had paid out or had to raise $400, and that he had given or let Fielding Burns have $1500 to go into merchandizing with Mason; he appeared to think Fielding was young and would not do well with it.

*W. B. Almond* testified, that in 1840, he was at the house of James Burns, senr., and held a conversation with said Burns, in substance as follows: He inquired of witness whether he knew the situation and circumstances of his son-in-law, Samuel T. Mason, as a merchant? witness replied he did not; he then told witness that his son Fielding had gone into partnership with Mason, and that, when requested to advance the said Fielding money to put into the firm, he had refused to do so for the reason that he did not know what the pecuniary situation of Mason was in the east; that the said Fielding being under age, if the said Mason was indebted on old scores largely in the east, the amount he might advance for the said Fielding would be a total loss, and do him, Fielding, no good.

James Burns, senr., further stated that he had advanced $1,500, by the said Mason signing the note to make him safe, should his apprehensions above named be well founded. Mason was the security, and the money had gone into the firm of Mason & Burns, and, as the witness

understood, as Fielding's share, or part of his share, of the capital of said firm.

The foregoing summary of the evidence, on the question of intention, establishes, we think, beyond doubt, that the $1,500 furnished by James Burns, senr., was intended as an ultimate advancement to his son Fielding, who was within a few months of his majority, for the purpose of enabling Fielding to engage in the mercantile business with his brother-in-law, Samuel T. Mason. The conclusion is reasonable and the object laudable.

If it be true, as above intimated, that the note in question was given by Fielding Burns, with Samuel T. Mason as his security, to James Burns, senr., for the purpose of raising money to be used by Fielding as his part of the capital stock of the mercantile firm of Mason & Burns, then it does not form a partnership debt for which the firm, as such, is primarily liable.

It is conceded by the appellants' counsel, that in the settlement of partnerships, the joint estate is first applicable to partnership debts: Such is unquestionably the law. But it is contended, that in this case, the note although executed by the partners in their individual names, is the joint and several note of the partners, and creates a joint and several indebtedness, and therefore the effects of the firm are properly applicable to the payment of the note.

Our statute, which declares that all contracts which, by the common law, are joint only, shall be construed to be joint and several, does not affect the question now under consideration. The statute does not change the rule of law governing partnerships. So far as the payers of the note are liable, their liability is joint and several; but being so, it does not follow, as a legal consequence, that the property of the firm is the fund out of which the note is to be paid, either at the option of one of the partners or the payee. On the contrary, the property of a copartnership, upon the insolvency of the firm, is considered in equity as a trust fund for the payment of the partnership creditors, whilst the creditors of the individual members are entitled to be first paid out of the separate property of the partners. In the one case, the contract is with and the credit given to the firm; in the other, the contract is with and the credit given to the individual members; hence, there is no hardship in the rule, as each class of creditors look to that fund to which they gave credit. 3 Kent's Com., 64. It is similar, somewhat, to three separate and distinct funds, for the payment of different classes of creditors, as, for instance, the property of Mason is first liable for his individual,

debts—the property of Burns is first liable for his individual debts—whilst the property of the partnership is first liable for the debts of the firm.

The note in question being the joint and several note of Samuel T. Mason and Fielding Burns, is a charge upon the separate property of each, and not to be enforced against the property of the firm, unless there be a want of sufficient individual property, and after satisfaction of all demands against the firm.

The bill alleges that, after the payment of all the liabilities of the firm of Mason & Burns, there will remain a large surplus to be divided between the parties. From the face of the bill, then, it would appear that so far as the rights of the creditors of the firm were concerned, there would be no necessity for the interference of the court; but the facts turn out differently, for, it is manifest from the report of the commissioner, that the firm is insolvent. The court having taken jurisdiction of the case, and finding the estate insolvent, it became the duty of the court to protect the interests of the creditors of the firm.

For the reason aforesaid, the decree of the Chancellor ought to be affirmed, and the other Judges concurring, the same is affirmed.